CORBIN O. EARL
Earl and Edwards, PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837
Telephone: (509) 765-1708
Facsimile: (509) 765-1705
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIELLE GOLDEN, an individual; JULIE MABE, an individual; DEANA CARTER-GARCIA, an individual; MARTHA CHRISTINE CORNELL, an individual; and CHRISTINA TERRY, an individual,<br><br>Plaintiffs,<br>v.<br><br>DEPARTMENT OF SOCIAL AND HEALTH SERVICES,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND DEMAND** |

COME NOW Plaintiffs, DANIELLE GOLDEN, JULIE MABE, DEANA CARTER-GARCIA, MARTHA CHRISTINE CORNELL and CHRISTINA TERRY (collectively "Plaintiffs"), by and through their attorney Corbin O. Earl of Earl and Edwards, PLLC, and for causes of action against the Defendant, complain and allege as follows:

**I.**
**PARTIES TO ARBITRATION**

1.1 Plaintiff, DANIELLE GOLDEN (hereinafter "Plaintiff" and/or "Plaintiff Golden") is a resident of King County, Washington.

1.2 Plaintiff, JULIE MABE (hereinafter "Plaintiff" and/or "Plaintiff Mabe") is a resident of Pierce County, Washington.

1.3 Plaintiff, DEANA CARTER-GARCIA (hereinafter "Plaintiff" and/or "Plaintiff Carter-Garcia"), is a resident of Sedgwick County, Kansas.

1.4 Plaintiff, MARTHA CHRISTINE CORNELL (hereinafter "Plaintiff" and/or "Plaintiff Cornell"), is a resident of Thurston County, Washington.

1.5 Plaintiff, CHRISTINA TERRY, (hereinafter "Plaintiff" and/or "Plaintiff Terry"), is a resident of King County, Washington.

1.6 Defendant, DEPARTMENT OF SOCIAL HEALTH AND SERVICES (hereinafter "Defendant" and/or the "DSHS"), at all times material hereto, was and is a Washington State agency.

**II.**
**JURISDICTION, VENUE, AND TORT CLAIM FORM**

2.1 Plaintiffs reallege every allegation previously pled herein as if such allegations were stated herein in their entirety.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

2.2 This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the U.S. Constitution and laws of the United States. This action presents a federal question, pursuant to 28 U.S.C. § 1343(a)(3)-(4). The Court also has jurisdiction under 42 U.S.C. § 2000-e5(f)(3). Venue is proper within this judicial district and division, pursuant to 28 U.S.C. § 1391(b), because the relevant events have occurred and are threated to occur in this jurisdictional district and division. The Defendant's principal place of business is in this district.

2.3 On March 11, 2022, Plaintiff Golden filed a tort claim form through the Department of Enterprise Services. More than sixty (60) days have passed since Defendant received Plaintiff's tort claim form.

2.4 On January 13, 2022, Plaintiff Mabe filed a tort claim form through the Department of Enterprise Services. More than sixty (60) days have passed since Defendant received Plaintiff's tort claim form.

2.5 On January 5, 2023, and November 1, 2024, Plaintiff Carter-Garcia filed a tort claim form through the Department of Enterprise Services. More than sixty (60) days have passed since Defendant received Plaintiff's tort claim form from January 5, 2023. Sixty (60) days have not passed since her November 1, 2024 tort claim.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

2.6 On February 22, 2022, and September 19, 2024, Plaintiff Cornell filed a tort claim form through the Department of Enterprise Services. More than sixty (60) days have passed since Defendant received Plaintiff's tort claim form from February 22, 2022, and September 19, 2024.

2.7 On February 9, 2022, Plaintiff Terry filed a tort claim form through the Department of Enterprise Services. More than sixty (60) days have passed since Defendant received Plaintiff's tort claim form.

## III.
## FACTUAL BACKGROUND

3.1 Plaintiffs reallege and incorporate herein the preceding paragraphs of this pleading as though set forth in full herein.

3.2 All Plaintiffs submitted a religious exemption to the COVID-19 vaccination and were granted the exemption but were denied accommodation.

3.3 All Plaintiffs had a religious belief that prevented them from receiving the COVID-19 vaccination. Generally, Plaintiffs shared the belief that the way in which the vaccination was developed (i.e., with the use of aborted fetal cells and/or as an mRNA gene therapy) was strongly opposed to their religious beliefs. Plaintiffs also believe that their bodies are temples, that God gives them answers to prayers about what to put in their bodies and has the power to heal them.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

**<u>DANIELLE GOLDEN (Plaintiff Golden)</u>:**

3.4 Plaintiff Golden worked for the Department of Developmental Disabilities Administration (DDA) as a Case Resource Manager for two years and three months.

3.5 In this role, she managed a caseload of 75 clients, scheduled and conducted annual and initial assessments, authorized payments for providers, and requested additional hours and services for clients under their Waiver.

3.6 Plaintiff Golden also assisted clients in crisis situations to access emergency services and community resources. She maintained up-to-date records in client files and used data tracking sheets to monitor service usage and prevent overpayments. She made referrals to nurse delegators, coordinated medical services for clients and families, and operated multiple systems such as Barcode, ACES, ACD, Microsoft Teams, Zoom, Microsoft Outlook, CARE Web, and CARE Desktop daily to track eligibility and ensure providers were contracted and qualified.

3.7 Plaintiff Golden conducted yearly home visits to ensure client health and safety, collaborated with multiple agencies and professionals, and reported incidents as necessary. She maintained various documents, including client files, incident reports, Excel sheets, and monitoring plans.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.8 Plaintiff Golden documented all client activity in the service episode record and navigated the Medicaid and Medicare systems to secure necessary healthcare for her clients. She attended monthly staff meetings and annual training sessions.

3.9 Plaintiff Golden worked with approximately 60 other case managers, all performing similar tasks, and was part of a group of six handling Basic Plus and Waiver clients.

3.10 She had no issues at work and received no disciplinary action during her employment.

3.11 From March 2020 to October 2020, DDA suspended home visits due to COVID-19. In November 2020, short 15-minute home visits were resumed with PPE and COVID screening tools, and families could decline in-person visits. Pre-pandemic, Plaintiff Golden completed 2–5 hours per visit, averaging six visits per month.

3.12 Throughout the COVID-19 pandemic, DSHS encouraged teleworking and implemented modifications such as completing assessments via phone or Zoom and mailing documents through clerical staff.

3.13 Plaintiff Golden followed these procedures and performed her duties safely while adhering to health protocols.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.14 Plaintiff Golden requested a religious accommodation on August 26, 2021.

3.15 On September 8, 2021, Plaintiff Golden received an email from DSHS approving her religious exemption but stating that she could not be accommodated in her current position.

3.16 The email indicated that reassignment was the only reasonable accommodation DSHS could offer. Plaintiff Golden was informed to provide any additional information supporting her ability to be accommodated in her current position.

3.17 Plaintiff Golden submitted follow-up information on September 9, 2021, but did not receive a follow-up meeting or further engagement from DSHS.

3.18 Subsequently, Plaintiff Golden received an email stating, "There are no other accommodations for your position available which sufficiently mitigate or eliminate the risk associated with having an unvaccinated employee performing the essential functions of your position."

3.19 The letter directed Plaintiff Golden to submit a reassignment request, including her name, contact information, and resume, by September 13, 2021, or to become fully vaccinated.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.20 Plaintiff Golden complied, submitting her information on September 10, 2021. On September 17, 2021, she received an email stating that employees not yet contacted by DSHS would hear from them during the week of September 20–24, 2021.

3.21 However, Plaintiff Golden did not receive further communication regarding her reassignment during that time.

3.22 On September 24, 2021, Plaintiff Golden received an email indicating that she was engaged in the COVID mandate reassignment process. The email also disclosed the names, divisions, and emails of over 300 employees involved in the same process, constituting a breach of her personal information.

3.23 Later that day, another email apologized for the error and requested recipients to delete the email and refrain from sharing it.

3.24 On October 6, 2021, Plaintiff Golden was informed by HR that she did not qualify for reassignment positions and received a notice of intent to separate for non-disciplinary reasons if she did not provide proof of full vaccination by October 18, 2021.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.25 Plaintiff Golden contacted DSHS on October 11, 2021, seeking clarification on the reassignment process and why telework was not considered an accommodation. She also engaged with her union to file a grievance for failure to engage in reassignment efforts and lack of transparency about reviewed positions.

3.26 Through public disclosure, Plaintiff Golden learned that the reassignment options included positions such as Human Resources Consultant and Fiscal Analyst 4.

3.27 Plaintiff Golden was told she did not meet the qualifications for these roles but was not provided an explanation. On October 16, 2021, she received a Notice of Non-Disciplinary Separation, finalizing her termination effective October 18, 2021.

3.28 The removal of Plaintiff Golden's position created significant stress for her co-workers, who were forced to absorb additional work and take on caseloads beyond their capacity. This not only increased their workload but also placed her clients at risk. With fewer available case managers, it became harder for clients to reach their case managers or supervisors, delaying critical services and heightening the risk of unmet needs for vulnerable individuals.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.29 The termination of Plaintiff Golden's employment caused her undue stress and placed a substantial financial burden on her. She experienced sleepless nights, anxiety, and a decline in her mental health.

3.30 From August 8, 2021, until her separation on October 18, 2021, she received daily and weekly emails pressuring her to receive the vaccination or her employment would be terminated.

3.31 Plaintiff Golden felt targeted and discriminated against because of her religious beliefs. Additionally, her union sent multiple emails pressuring employees to get vaccinated and offered incentives such as a 3.5% pay increase and a $1,700 bonus for those who remained employed through July 2022.

3.32 These incentives, however, were not available to Plaintiff Golden because she was terminated, even though she worked diligently throughout the COVID-19 pandemic.

3.33 Attempts by Plaintiff Golden to contact DSHS for clarification or assistance were met with either no response or automated replies discouraging follow-up emails.

3.34 DSHS frequently changed the requirements for document submissions without adequate notice, adding to her stress and confusion. Despite being deemed a "risk to others," Plaintiff Golden was still expected to complete home visits.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.35 Her supervisor inappropriately asked her whether she had received the COVID-19 vaccine, even after her religious exemption had been approved without accommodation.

3.36 This inquiry violated Plaintiff Golden's privacy and should have been handled by DSHS.

3.37 Contrary to assurances from DSHS that there would be an interactive reassignment process, Plaintiff Golden received only an email stating that no reassignment options were available for her.

3.38 After Plaintiff Golden's separation on October 18, 2021, COVID-19 outbreaks occurred in both the DSHS Seattle office and the Kent DDA/DSHS office.

3.39 Plaintiff Golden later discovered that her former position had been reposted on the DSHS website, and the job description stated that employees could request a COVID-19 vaccine accommodation.

3.40 Additionally, DDA case managers have continued teleworking and conducting short, 15-minute home visits with PPE, practices Plaintiff Golden was performing before her termination.

3.41 Despite these accommodations now being available, DSHS claimed they could not accommodate Plaintiff Golden's position.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.42 The circumstances surrounding Plaintiff Golden's termination caused her severe emotional distress, anxiety, and sleepless nights. Even after her separation, all DSHS case managers in her division were able to telework full-time, a policy that could have reasonably applied to her.

3.43 After her termination, Plaintiff Golden applied for and received unemployment benefits. However, finding a comparable job that matched her pay at DSHS and did not have a COVID-19 vaccine requirement proved challenging.

3.44 Plaintiff Golden remained unemployed until January 2022, when she was hired by Pierce County as a case manager in a role similar to her previous position at DSHS.

3.45 During this time, Plaintiff Golden and her husband struggled financially. Most positions she applied for offered significantly lower pay than she earned at DSHS. Without insurance, Plaintiff Golden was forced to enroll in state insurance until her husband could add her to his plan, which was costly.

3.46 Being terminated from DSHS caused Plaintiff Golden embarrassment and shame for following her religious beliefs and refusing the vaccination. The termination took a toll on her physical health, mental well-being, and relationships.

3.47 Plaintiff Golden once reapplied for her former position at DSHS but was not offered the job.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

**<u>JULIE MABE (Plaintiff Mabe)</u>:**

3.48 Plaintiff Mabe began her career with DSHS on January 3, 2011, as a Financial Services Specialist. After three years in that position, she was promoted to WorkFirst Case Manager.

3.49 In September 2016, Plaintiff Mabe was again promoted to a Disabilities Case Manager, where she completed annual assessments in the homes of clients to determine and approve paid caregiver hours.

3.50 Plaintiff Mabe had never faced disciplinary action during her tenure. She consistently met performance expectations in her 1:1 reviews with her supervisor and maintained positive relationships with her colleagues and supervisor.

3.51 Plaintiff Mabe had a stable caseload and developed strong professional relationships with her clients. She was happy in her role and intended to retire from DSHS.

3.52 In April 2021, DSHS DDA required all staff to begin teleworking. Assessments were conducted over the phone, and the required paperwork was signed by clients in their homes during visits, which were still mandated.

3.53 These visits were limited to 15 minutes and conducted under strict protocols, including masking and social distancing. DSHS rationalized that COVID-19 could not spread within the 15-minute time frame.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.54 Plaintiff Mabe believes she could have been accommodated through alternative means, such as obtaining online or verbal signatures or reassigning her seven monthly home visits to a vaccinated coworker in exchange for taking on additional assessments.

3.55 Despite being deemed a public health threat, Plaintiff Mabe continued performing these brief in-home visits until her termination on October 18, 2021.

3.56 In August 2021, DSHS sent an email announcing that all State employees would be required to take the COVID-19 vaccine.

3.57 By September, DSHS provided a compliance deadline of October 18, 2021.

3.58 DSHS sent weekly reminders of the vaccine mandate and outlined the consequences for failing to comply.

3.59 Eventually, DSHS offered medical and religious exemptions.

3.60 Plaintiff Mabe applied for a religious exemption, which was approved. However, DSHS determined that she was a public health threat to herself and others and informed her that they could not accommodate her in her role, as her position required face-to-face interaction with clients.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.61 Somehow, word spread quickly among coworkers that Plaintiff Mabe would not take the COVID-19 vaccine. She was pressured by coworkers to "take the shot" and was labeled selfish.

3.62 Some coworkers ended their friendships with Plaintiff Mabe. She also received repeated communications from DSHS reminding her of the vaccine deadline and the consequences of noncompliance.

3.63 DSHS continued to pressure unvaccinated staff, and on October 18, 2021, Plaintiff Mabe was separated from her employment with DSHS DDA because she did not take the vaccine.

3.64 After her termination, Plaintiff Mabe kept her termination private, fearing further judgment for her religious beliefs and personal medical decisions.

3.65 It was one of the most belittling and emotionally battering moments of Plaintiff Mabe's adult life.

3.66 The termination caused financial ruin, and Plaintiff Mabe was labeled as selfish and a public health threat. Watching news coverage of COVID-19 and vaccine-related developments often exacerbated her emotional distress.

3.67 Following her termination, Plaintiff Mabe spent months applying for jobs. Many positions she was qualified for required the vaccine.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.68 Plaintiff Mabe was a single mother with a teenage son to support. Without a second household income, she faced significant financial challenges.

3.69 While trying to expedite her job search, most opportunities offered significantly lower pay than Plaintiff Mabe earned at DSHS.

3.70 In February 2022, Plaintiff Mabe was hired by Pierce County Aging and Disabilities as a Case Manager. Pierce County did not require the COVID-19 vaccine. However, the pay was substantially less than her previous role, leaving her financially desperate.

3.71 To make ends meet, she accumulated debt by relying on loans and credit cards. Plaintiff Mabe also filed for bankruptcy shortly after her termination, cashed out her retirement to avoid losing her home, and used the funds to provide food for her family.

3.72 Even after taking the job with Pierce County, Plaintiff Mabe continued to struggle financially, taking on a part-time bartending job three nights a week to help pay off the debt she incurred.

3.73 When she started at Pierce County, Plaintiff Mabe earned approximately $60,000 annually, compared to the $75,000 she made with DSHS.

3.74 Over nearly three years, Plaintiff Mabe's salary at Pierce County increased to $85,000 annually, with an additional $1,500 per month from bartending.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.75 Despite this, Plaintiff Mabe continues to feel the financial impact of her termination. She reapplied for her former position at DSHS several times but was not rehired because of her vaccination status.

3.76 After the mandate was lifted, DSHS invited terminated employees to reapply but required them to sign an agreement waiving their right to sue the State as a condition of rehire.

3.77 DSHS's actions severely impacted Plaintiff Mabe economically and emotionally.

**DEANA CARTER-GARCIA (Plaintiff Carter-Garcia):**

3.78 Plaintiff Carter-Garcia began her employment with DSHS in May 2012 as a Financial Service Specialist.

3.79 On December 1, 2016, Plaintiff Carter-Garcia transferred to the Developmental Disability Administration (DDA) department. She loved her job and her clients, managing a caseload of 75 individuals and completing their assessments to help them qualify for benefits.

3.80 By the end of her employment, Plaintiff Carter-Garcia earned approximately $70,000 annually.

3.81 Plaintiff Carter-Garcia was good at her job and loved what she did. She loved helping people.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.82 Because of COVID-19, starting around March 14, 2020, there were no in-home client visits or in-office work.

3.83 On August 9, 2021, after approximately 18 months of remote work, Plaintiff Carter-Garcia and her colleagues were notified that they would be required to receive the COVID-19 vaccine to retain their employment.

3.84 On August 23, 2021, Plaintiff Carter-Garcia filed a religious exemption request. The next day, DSHS sent her another form, which she completed and returned the same day.

3.85 On September 8, 2021, DSHS informed her that they accepted her religious exemption but could not accommodate her, though she could submit for a reassignment.

3.86 DSHS did not engage in an interactive process. Plaintiff Carter-Garcia's employment was terminated on October 18, 2021.

3.87 During her time with DSHS and prior to COVID-19, Plaintiff Carter-Garcia had covered home visits for two coworkers who could not perform in-person visits themselves.

3.88 Despite this precedent, DSHS refused to provide Plaintiff Carter-Garcia with the same accommodation she had previously extended to others.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.89 Plaintiff Carter-Garcia questioned why a vaccinated coworker could not have temporarily taken over her home visits, especially since such visits were not being conducted at the time due to COVID-19 restrictions.

3.90 Plaintiff Carter-Garcia felt DSHS treated her as a second-class citizen, treating her with derision and hostility.

3.91 DSHS's termination of Plaintiff Carter-Garcia negatively impacted her clients' families. This left Washington's most vulnerable populations underserved and without the resources they desperately needed. This ongoing neglect of her former clients continues to weigh heavily on her heart.

3.92 The termination upended Plaintiff Carter-Garcia's life. While she was fortunate to have a husband with financial stability, her termination caused significant disruptions to her monthly income, retirement benefits, Social Security contributions, and access to health insurance.

3.93 Forced to sell the home she and her husband had lovingly restored, they moved back to Kansas, selling their house within a day with multiple offers. Plaintiff Carter-Garcia left Washington on November 14, 2021.

3.94 Plaintiff Carter-Garcia remained without work until September 2022. She initially did not plan to reenter the workforce due to lingering fears over COVID-19 mandates.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.95 However, a District Court Judge in Kansas who learned of Plaintiff Carter-Garcia's return invited her to work for him. In Kansas, she is not required to be vaccinated.

**MARTHA CHRISTINE CORNELL (Plaintiff Cornell):**

3.96 On or about 2010, Plaintiff Cornell started working for Residential Care Services. Residential Care Services is part of the DSHS.

3.97 In 2016, Plaintiff Cornell was promoted into a management position in Tumwater, and then later relocated to be a field manager in the Vancouver, WA office.

3.98 When the COVID pandemic began, Plaintiff Cornell worked remotely as needed and was able to work remotely except two days a week.

3.99 Plaintiff Cornell also was able to utilize telehealth when she needed to be in the office and often could go a whole day without seeing someone in person.

3.100 For those times that Plaintiff Cornell was in locations that she may pass people, she was easily able to wear a mask and social distance.

3.101 On August 9, 2021, Governor Inslee issued Proclamation 21-14, which provided that all Department of Social and Health Services (DSHS) employees must be fully vaccinated against COVID-19 to engage in employment after October 18, 2021.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.102 However, the Proclamation further provided for exemptions from the vaccine requirement, notably for workers who were unable to receive the vaccine because the requirement conflicted with their sincerely held religious beliefs, practice, or observance.

3.103 The Proclamation further provided that State Agencies must provide reasonable accommodations that are required under the Washington Law Against Discrimination (WLAD).

3.104 On August 16, 2021, all DSHS employees, including Plaintiff Cornell, received an email or letter from DSHS providing details related to the vaccination/exemption requirement, including the process for requesting a medical or religious exemption.

3.105 Plaintiff Cornell requested a religious exemption within the required timeframes.

3.106 Plaintiff Cornell asked for reasonable accommodation, such as doing what she had done for two years which was wearing a mask, working remotely, and isolating.

3.107 Plaintiff Cornell was also willing to consider alternative options to make the job work without violating her deeply held beliefs and convictions.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.108 The October 18, 2021 deadline came and went without a response from DSHS.

3.109 On October 27, 2021, Plaintiff Cornell received an email from DSHS stating that they could not accommodate her.

3.110 DSHS did not engage in the interactive process.

3.111 In response to this email, Plaintiff Cornell notified DSHS and her management that she intended to take the forced-retirement option as provided within the notice.

3.112 Plaintiff Cornell contacted Department of Retirement Systems ("DRS") and selected a retirement date.

3.113 However, Human Resources rejected her retirement and told her that she needed to retire by December 31, 2021.

3.114 In response to this, Plaintiff Cornell again contacted DRS.

3.115 Plaintiff Cornell then forwarded an email received from DRS to DSHS that indicated she had initiated retirement and there was no other step she needed to complete to retire by the new date.

3.116 By this point, this process had significantly impacted Plaintiff Cornell's emotional and physical well-being.

3.117 Plaintiff Cornell requested and received an FMLA packet.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.118 The packet included a PDF for an AA3 position, despite Plaintiff Cornell holding a position as a Field Manager under Washington Management Services ("WMS").

3.119 Plaintiff Cornell made an appointment with her physician to pursue treatment and apply for leave under the Family and Medical Leave Act ("FMLA").

3.120 On November 5, 2021, Plaintiff Cornell's physician completed and faxed the FMLA leave paperwork to DSHS.

3.121 This paperwork indicated Plaintiff Cornell's physician determined FMLA leave would be appropriate through February of 2022.

3.122 Plaintiff Cornell intended to submit leave in lieu of leave without pay.

3.123 On November 10, 2021, Plaintiff Cornell subsequently contacted Angela Petty regarding the status of her FMLA leave.

3.124 Ms. Petty indicated that the FMLA leave paperwork was not received.

3.125 Plaintiff Cornell forwarded the email from Angela to her physician.

3.126 Plaintiff Cornell's physician verified their office had successfully faxed this paperwork on November 5, 2021.

3.127 Before Plaintiff Cornell could work out this issue with DSHS, on November 11, 2021, Plaintiff Cornell received a letter dated November 9, 2021, via US Postal services, indicating that she did not provide the required information or



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

did not actively participate in the accommodation or reassignment process, and her employment terminated as of November 9, 2021.

3.128 DSHS did not provide Plaintiff Cornell even one meeting to discuss alternative options or accommodations before terminating her.

3.129 DSHS also rejected her FMLA without any more explanation than they did not receive the paperwork.

3.130 Having denied her the retirement option, Plaintiff Cornell was left with no income and no insurance and had to rely on unemployment.

3.131 In March 2022, Plaintiff Cornell secured a short-term project position as a background check project manager with Developmental Disabilities Administration (DDA), which is also part of DSHS.

3.132 DDA granted her exemption and accommodated her and allowed her to work unvaccinated.

3.133 Plaintiff Cornell followed the directives of the State and DSHS's guidance to pursue an exemption, a reasonable accommodation, and retirement.

3.134 At every juncture, Plaintiff Cornell was in communication with DSHS personnel and presenting her course of action.

3.135 None of the actions taken have shown to be a result of Plaintiff Cornell's performance or inability to meet the job requirements.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.136 Furthermore, DSHS's actions in separating Plaintiff Cornell's service failed to give adequate notice, failed to follow long-standing agency practice, and are in direct conflict with WAC 357-58-445, among other laws.

3.137 This wrongful termination impacted Plaintiff Cornell's finances, career advancement, and the suggested retirement date would have incurred penalties for early retirement.

**CHRISTINA TERRY (Plaintiff Terry)**:

3.138 Plaintiff Terry began her career with DSHS in July 1997. She initially volunteered for a day and was subsequently offered a 30-day emergency hire position to establish a resource room supporting the new welfare reform initiatives.

3.139 The resource room provided job postings, computers for online job searches and resume creation, and resources to help clients overcome barriers to employment.

3.140 After successfully completing the 30-day position, demonstrating reliability, a strong work ethic, and excellent client relations, Plaintiff Terry was offered a temporary clerical position.

3.141 During her time in clerical, Plaintiff Terry's supervisor advocated for her through an extensive justification to prioritize her hiring over other candidates with priority hiring status, including veterans, minorities, and disabled individuals.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.142 Plaintiff Terry worked in clerical for over two years before a Financial Services Supervisor encouraged her to apply for an open position as a Financial Service Specialist (FSS).

3.143 Plaintiff Terry applied, was hired, and subsequently advanced through the FSS 1-3 series, working as a seasoned Financial Services Specialist for approximately 12 years.

3.144 During this time, another supervisor suggested Plaintiff Terry apply for an open FSS Lead worker position. Although hesitant due to the increased responsibilities, Plaintiff Terry applied and was offered the FSS4 position, which she held for about two years.

3.145 Later, a former coworker encouraged Plaintiff Terry to apply for a position with a new unit in Olympia. Despite the longer commute, the significant pay increase offset the extra travel costs. She was hired, and in her eight years with the PARIS unit, she contributed to creating workflow processes and procedures.

3.146 Over the years, Plaintiff Terry was consistently promoted, moving from volunteer to permanent employee, from clerical to Financial Services Specialist, from Financial to Lead worker, and ultimately to SHPC2.

3.147 Remarkably, each of these promotions came at the request of hiring supervisors who sought Plaintiff Terry out and encouraged her to apply.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.148 Plaintiff Terry loved her job. From the start to the end of her career, she found great fulfillment in her work, serving her community and supporting individuals less fortunate.

3.149 Plaintiff Terry took pride in her role as a case manager. She worked with clients from all different age ranges, ethnicity and cultural backgrounds, but she particularly enjoyed assisting elderly clients.

3.150 Plaintiff Terry assisted with technology, conducted investigations, identified fraud, and saved taxpayers millions of dollars.

3.151 Although her career had its challenges, there were more good days than bad. Plaintiff Terry formed lasting friendships with many coworkers and enjoyed positive relationships with most supervisors.

3.152 When the COVID-19 vaccine mandate was announced, Plaintiff Terry felt uncertain. She decided to fast and pray for clarity.

3.153 During her eight-day fast, Plaintiff Terry felt the Lord clearly tell her not to take the vaccine. She also experienced healing of her migraines and back injury during this time. She sought guidance through scripture, continued to pray, and ultimately submitted her religious exemption paperwork.

3.154 DSHS approved Plaintiff Terry's exemption and she was granted 60-day accommodation.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.155 During her accommodation period, however, Plaintiff Terry's job description was revised to require her presence in the office two days a month.

3.156 Despite Plaintiff Terry's willingness to continue working remotely or even complete her in-office tasks in a way that minimized risk, DSHS informed her that they could no longer accommodate her.

3.157 Plaintiff Terry pointed out that her in-office work would take place in an isolated office with one desk and restricted access to authorized personnel.

3.158 Even during those two days, Plaintiff Terry's interaction with others would be minimal, as most employees in the building were still working remotely.

3.159 Nevertheless, DSHS refused to accommodate Plaintiff Terry, and her employment was terminated. DSHS did not engage in an actual interactive process.

3.160 The loss of her job was devastating for Plaintiff Terry. Her 24+ years with DSHS represented more than a career – it was a source of pride, identity, and fulfillment. She found purpose in serving her community and had built strong professional and personal relationships.

3.161 Plaintiff Terry fought to keep her position and was willing to comply with all requirements except receiving the vaccine.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

3.162 Plaintiff Terry's termination led to a period of depression, affecting her sense of self-worth, finances, and overall well-being. While she had the support of her husband, she struggled emotionally and found herself in turmoil.

3.163 Plaintiff Terry remained unemployed for approximately six months before securing a new job. The new position offered significantly lower pay and less comprehensive benefits than her role with DSHS.

3.164 Despite moving forward, the experience of losing her long-standing career continues to have a profound negative impact on Plaintiff Terry's life.

## IV.
## FIRST CLAIM FOR RELIEF
## (Religious Discrimination – Failure to Accommodate in Violation of Washington Law)

4.1 Plaintiffs reallege every allegation previously pled herein as if such allegations were stated herein in their entirety.

4.2 Plaintiffs are members of a protected class on the basis of their devout and sincerely held religious beliefs.

4.3 Plaintiffs sincerely held religious beliefs conflicted with Defendant's COVID-19 vaccine mandate.

4.4 When Plaintiffs raised their well-founded and sincere religious objection to taking the COVID-19 vaccine and applied for an exemption, Defendant



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

failed to engage in the interactive process to accommodate Plaintiffs religious beliefs and instead gave Plaintiffs a list of ultimatums.

4.5 Instead of finding a reasonable accommodation or a set of accommodations for Plaintiffs religious beliefs, Defendant terminated them.

4.6 The unlawful discrimination against Plaintiffs religion by Defendant as outlined above was a proximate cause of Plaintiffs wrongful termination.

4.7 As a result of Defendant's violation of RCW 49.60, Plaintiffs have been damaged in an amount to be determined at trial, and for non-economic damages in an amount to be determined at trial for suffering, emotional distress, anguish, and mental distress. Plaintiffs further seek attorney's fees and costs.

## V.
## SECOND CLAIM FOR RELIEF
### (Religious Discrimination – Disparate Impact in Violation of Washington Law)

5.1 Plaintiffs reallege every allegation previously pled herein as if such allegations were stated herein in their entirety.

5.2 Defendant implemented a facially neutral employment practice by mandating that all employees receive the COVID-19 vaccination.

5.3 The employment practice of implementing this mandate fell more harshly on those with religious beliefs.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

5.4 Defendant did not have a "business necessity" and, even if they did, it does not account for the way in which they implemented the vaccine mandate.

5.5 By allowing no accommodation for any employee with a vaccination exemption, Defendant's implementation fell more harshly on those with religious beliefs.

5.6 As a result, Plaintiffs were damaged in an amount to be proven at trial.

## VI.
## THIRD CLAIM FOR RELIEF
## (Wrongful Termination in Violation of Public Policy)

6.1 Plaintiffs reallege every allegation previously pled herein as if such allegations were stated herein in their entirety.

6.2 Plaintiffs have a right to refuse medical treatment based on the common-law right to informed consent and/or a constitutional privacy right.

6.3 An individual has a right to ultimately control what happens to their body.

6.4 Here, Plaintiffs refused to undergo the unwanted COVID-19 treatment, inaccurately termed a "vaccination", as was their right.

6.5 Defendant clearly terminated Plaintiffs because of their refusal to undergo COVID-19 treatment.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

6.6 Defendant does not have a legitimate, nonretaliatory reason for the discharge.

6.7 Even if Defendant does have a legitimate, nonretaliatory reason for the discharge, Defendant's reason is either pretextual or Plaintiffs refusal to take the COVID-19 treatment was a substantial factor motivating the employer to discharge Plaintiffs.

6.8 As a direct and proximate cause, Plaintiffs were damaged to an amount to be proven at trial.

## VII.
## FOURTH CLAIM FOR RELIEF
## (Religious Discrimination – Disparate Treatment in Violation of Washington Law)

7.1 Plaintiffs reallege every allegation previously pled herein as if such allegations were stated herein in their entirety.

7.2 Plaintiffs are members of a protected class as persons with religious beliefs.

7.3 When Defendant found out that Plaintiffs had a religious belief against the COVID-19 treatment, their treatment by Defendant became worse than those who did not have a religious belief against the treatment.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

7.4 Those without the belief were afforded privileges and preferential treatment like not having to wear a mask.

7.5 Those, like Plaintiffs, who had a religious belief against the treatment, were treated with derision, were shunned, and were either offered retirement or were terminated.

7.6 As a direct and proximate cause, Plaintiffs were damaged to an amount to be proven at trial.

**VIII.**
**FIFTH CLAIM FOR RELIEF**
**(Violation of Right to Privacy)**

8.1 Plaintiffs reallege every allegation previously pled herein as if such allegations were stated herein in their entirety.

8.2 By demanding an unproven injectable into his bloodstream and by demanding proof of specific private medical information as a condition of employment, without authority of law, Defendant has violated Plaintiffs Right to Privacy under Article 1, Section 7 of the Washington State Constitution.

8.3 A tort action for invasion of privacy exists in Washington. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123 (1978).

8.4 Defendant sent an email to 300+ employees that disclosed the medical information of Plaintiffs without their consent.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

8.5 Defendant disclosed through their policies and dissemination of their reasoning for said policies, private health information about each staff member, including Plaintiffs.

8.6 Defendant violated the privacy rights of Plaintiffs to inflict severe emotional distress and rob them of their peace and feelings of being treated equally before the law for the express purpose of causing them to surrender their rights to refuse medical treatment without consequence.

8.7 The facts and the Defendant's conduct committed with gross negligence, recklessness, or intent, described above give rise to a claim of Violation of Right to Privacy under the common law of the State of Washington against the Defendant for the damages incurred, which include, among other things, severe emotional turmoil.

**IX.**
**SIXTH CLAIM FOR RELIEF**
**(Civil Rights Violations)**

9.1 Plaintiffs reallege every allegation previously pled herein as if such allegations were stated herein in their entirety. The Department of Social Health and Services is a state actor. All actions taken by said Defendant were done under color of state law.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

9.2 By its refusal to grant a religious exemption or accommodation from the COVID-19 vaccine requirement, the Defendant denied or abridged the constitutional rights of the Plaintiffs to the free exercise of religion as protected by the First Amendment to the Constitution of the United States made applicable to the state defendants via the Due Process Clause of the 14th Amendment.

9.3 By its refusal to grant a religious exemption or accommodation from the COVID-19 vaccine requirement while granting other accommodations or exemptions, the Defendant denied the constitutional rights of the plaintiffs to the equal protection of the law as guaranteed by the Equal Protection Clause of the 14th Amendment.

9.4 By its actions in denying or abridging the constitutional rights of the Plaintiffs, the Defendant has violated the provisions of 42 U.S.C. § 1983.

9.5 Plaintiffs are entitled to compensatory and punitive damages in amounts in excess of $75,000.

9.6 Accordingly, Plaintiffs are also entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988.



Earl and Edwards PLLC
1334 S. Pioneer Way
Moses Lake, WA 98837

## X.
## JURY DEMAND

10.1 Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

## XI.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

A. For a judgment in favor of Plaintiffs and against Defendant in an amount to be determined at trial;

B. Plaintiffs' reasonable attorney fees, costs, and prevailing party fees;

C. Pre- and post-judgement interest; and

D. For such other and further relief as the Court deems just and equitable.

DATED this 5th day of December, 2024.

EARL AND EDWARDS, PLLC

CORBIN O. EARL, WSBA #52300
Attorney for Plaintiffs
1334 S. Pioneer Way
Moses Lake, WA 98837
(509) 765-1708
corbin@earlandedwards.com